The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. All right, please be seated, please. All right, next case we'll hear is Metropolitan Development v. Cool Spring Road. Mr. DePalma, whenever you're ready. Your Honor, this case involves a 17.3-acre parcel of property that's within walking distance from the University of Maryland College Park campus and will be within spitting distance of the forthcoming metro station on the Purple Line to be opened in 2027. The key language at issue is Section 3.3 of the Joint Venture Agreement. Metropolitan shall have the right to pursue and obtain the land use approvals and shall use its commercially reasonable efforts to pursue and obtain the land use approvals. And my argument today is that this deal is a guaranteed level of effort. It is not a guaranteed result. The result, getting the approvals, is not a condition to close. How do we know that? Four reasons, Your Honor, and since this is a contract case and the question is, is the language a condition, we construe the contract as a whole. And it starts immediately, Section 1.1 definitions, subsections I and J. These set forth a closing date, right? And the closing date is the same as the outside date in Section I. So we look to the outside day, which is Section J. And that says the date that is 60 days after the earlier of final non-appealable issuance of land use approvals, here and after defined, or. So it's either or, little to I, the expiration of the entitlement period, hereafter defined. So at the very beginning, the closing date, either you close after you get the land use approvals or you close after the expiration of the entitlement period. Aren't you kind of over-reading that? You're reading a definition that sets a date, an outside date. If nobody sets another date, this is the one. You're reading that to guarantee closing, right? I mean, it makes sense that it would be the earlier of when you get the approvals or at the end of the entitlement period because Metropolitan can, there's a paragraph later that you talk about where they can choose not to pursue the approvals anymore, right? Correct. And so it makes sense that there would be reference to both. But you seem to be saying that this definition means you're going to close, you know, either way, which seems to over-read a definition that just sets a date. Your Honor, I don't agree that I'm over-reading the definition. I didn't think you would. That's all right. But I would say that if obtaining the land use approvals was the condition proceeding to closing, and this is just one of the four things that I'll point the Court to in connection with this contract, then it seems passing strange to have the closing date pegged to something other than obtaining those approvals. Well, as I just mentioned, there could be other reasons, right? Like this is just one of your factors, but it's not the linchpin, it doesn't seem to me. And the District Court focused on this use its commercially reasonable efforts to pursue and obtain. Correct, Your Honor. That seems to be the main language you can draw from other parts. But why doesn't that mean, you know, use X to obtain Y? So you have to obtain Y, and you have to use a certain thing to do it. Why doesn't it mean you have to obtain them? Why don't we fast forward to Section 3.3a then, Your Honor, since that's the penultimate issue. Although I do think it fits well with the other provisions, for example, the closing date in 3.3b, which we'll get to right after I answer your question about Section 3.3a, right? So Section 3.3a, commercially reasonable efforts to pursue and obtain. And I like to think in analogies. So I think what if you have to use reasonable efforts to climb and summit Mount Everest, right? But then you're on your way there, and due to inclement weather, you're not able to get to the top. Have you discharged your obligation to use reasonable efforts, or must you actually summit Mount Everest? Because it's the same thing here, right? It's commercially reasonable efforts to pursue and obtain. It doesn't say commercially reasonable efforts to pursue, and notwithstanding those efforts, you must actually obtain the land use approvals. Well, it says use its commercially reasonable efforts, which I find a real awkward phrasing. It would be more obvious that you're right if it said undertake reasonable efforts to do X, right? And so maybe then we just look to see whether you undertook reasonable efforts. But here it says use its commercially reasonable efforts to pursue and obtain, right? Then you seem to agree that if you just have to make efforts to obtain, attempting to obtain, the word for that is pursue. So the two things mean the same thing if it just means attempt to obtain. Well, Your Honor, lawyers are sometimes known to belt and suspenders things. We don't always see a single word when two would do, right? And we don't always see two words when three would do. So you agree that your reading essentially equates pursue. Pursue doesn't mean a lot if your reading of obtain is correct. Do you agree with that? I know you've got a bunch of other arguments that if the other side is right, it reads out other language. So I'm not suggesting this is positive. And I appreciate your point that sometimes lawyers can be redundant. But it does essentially make pursue fairly meaningless in that clause. Do you agree? No, Your Honor. I don't think I have to fight that battle. But I would say that the two don't have to be different. Pursue and obtain could be synonyms for the same thing. And what they're really getting at, and Judge Rushing had mentioned, what if this was just exercise efforts to do something? Well, there's different levels of effort, right? There's best efforts, which requires a certain level of best efforts. Then there's commercially reasonable efforts. Then maybe there might be try, right? And the parties chose commercially reasonable efforts for both pursue and obtain as the series modifier canon, which I know we spent some time on in the Supreme Court case of Facebook versus DeGueud. But the premise is that that commercially reasonable efforts applies to both. Do they have to mean different things? No, they don't. Could they? Yes, they could. That's why the parties were very granular about the minimum expenditures that that means. You have to spend this much a year. You have to have a budget. We have to see it. Yeah, I thought that was interesting because I think in the paragraph about the expenditures, the parties specify that if Metropolitan doesn't expend a certain amount, and even after being put on notice, that's a breach, right? It's a breach not to use these reasonable efforts. But I didn't find anywhere that it's a breach not to obtain the approvals. It's just you don't close, right? So it could be a condition for closing, but they can't come after Metropolitan for damages. It's obviously not a breach, but failing to use your efforts to a certain level is a breach. Well, Your Honor, I would point the Court to Section 10.5 of the contract, which says the provisions of this agreement that contemplate performance after the closing and the obligations of the parties not fully performed at the closing shall survive the closing and shall not be deemed to have merged into or waived by the instruments of closing. Don't the other provisions assign if approvals aren't obtained, whatever has been, the applications are assigned to the parcel owners if closing doesn't happen, right? If they're assigned to the parcel owners, the agreement's terminated. No, Your Honor. So 3.3a is what we've been talking about, but if you go to the paragraph below that, 3.3b, 3.3b is the third provision I was going to point the Court to. So there's the definition of closing date, there's 3.3a, and then there's 3.3b. So 3.3b, midway down the paragraph, starts with the word if, and it says if, little a, applicable governmental authorities do not issue land use approvals prior to the expiration of the entitlement period. So that's exactly what we've been discussing, the circumstance where we don't get the approvals prior to the expiration of the entitlement period. And then it goes on to say, in each case, so after a, and I'm focusing on a, but there's a b, c, and a d, then there's a comma, in each case in Metropolitan's sole and absolute discretion, then Metropolitan may deliver written notice of such event, whereupon, little ii, this agreement shall terminate. And then that's the circumstance where we would assign our rights to them. But that's something both parties represented by sophisticated law firms agreed would be in Metropolitan's sole and absolute discretion. You might be wrong about that, though, right? There's four things, you skipped over the other three. The first one is that approvals don't issue. The other three refer to things that are in Metropolitan's sole and absolute discretion, right? B is Metropolitan determines that they're unlikely to issue. C is Metropolitan determines that they can't be obtained in a cost-effective manner. D is the government authorities approve it in a way that Metropolitan finds unacceptable. Each in its sole discretion, sole and absolute discretion, then Metropolitan may deliver written notice. The sole and absolute discretion is not in the may deliver written notice. It's in determining those three previous provisions, right, whether those preconditions have been satisfied. Yes, Your Honor. But there's no ambiguity about whether the first precondition's been satisfied, either they're issued or they're not, the approvals. Well, no, that's true, but I don't know that I'm fully understanding your comment. I do think that in each case in Metropolitan's sole and absolute discretion means something. Right. So there are four preconditions here. One is approvals aren't given. And then the other three all say if Metropolitan decides that something's not going to be satisfactory in its sole and absolute discretion,  sole and absolute discretion refers to the discretion in B, C, and D. You want to read sole and absolute discretion to come after the comma. Then Metropolitan may, in its sole and absolute discretion, deliver written notice. I do, Your Honor. That's correct. But that's not how it's written. I disagree. And here's why. If I may, Your Honor? Sure. And I do appreciate the court's question. So A doesn't refer to Metropolitan making a determination. It just says applicable government authorities don't issue, right? Right. B does. B says Metropolitan determines. And then C says Metropolitan determines. But then D says applicable government authorities approve a development or impose conditions that are unacceptable to Metropolitan. And then there's a comma setting that off. In each case in Metropolitan's sole and absolute discretion. So I don't – it's A, B, C, D, comma. In each case in Metropolitan's sole and absolute discretion. And then it says Metropolitan may. So even after you get past the comma in the language we've been parsing, it still gives Metropolitan the option to decide whether to terminate. Yeah. It seems that before the expiration of the entitlement period, Metropolitan could decide to go to the parcel owners and say, either we're not getting these approvals or we haven't gotten them. It's not going to happen. But that doesn't solve the question for you of, well, what if the entitlement period ends and you don't have the approvals? Well, what is – It's still possible that they're required to get them, and if they don't – Well, your Honor, if you look at A, if applicable government authorities do not issue land use approvals prior to the expiration of the entitlement period, then in each case in Metropolitan's sole and absolute – Metropolitan may. So that's calling out the exact thing that happened here. Yeah. They didn't issue the land use – and then it says Metropolitan may. It just seems like sole and absolute discretion refers to in each case, right? They get to determine whether those preconditions have been met, but they don't get to decide, well, the entitlement period's over, we didn't get the approvals, but, you know, we still have to close. Again, I know none of these are the deciding factor for you. You have multiple arguments, but I didn't find that one necessarily – I didn't find that phrase to mean what you think it means. Or at least it's questionable. Well, I mean, I think we try to construe the agreement as a whole, and that's why we have a closing date that says one of two things happen. You get the approvals or the entitlement period expires. Either of those is closing, and then you look at this, and it says if you don't get the entitlement periods, then in your sole and absolute discretion, which is how I read it, and I understand even if we read it the way the court reads it, Your Honor, it doesn't lead to a different result. Metropolitan may deliver written notice of such event. How long does Metropolitan get after the entitlement period's over? To close? To get the approvals. Say that they, you know, they – is there any instance in which the parcel owners can say we're tired of this, we've given you long enough, we want you out? In the joint, yes, Your Honor. But it might be a while, and it's going to be subject to the dispute resolution provisions of the joint venture agreement that's attached to the joint venture formation agreement. They have to have a buyout, right? Parcel owners could lose it. Parcel owners can never lose, Your Honor. Parcel owners come into this with $1.4 million capital account against a land that was valued at $843,000. So they're coming in higher than they started. And then Metropolitan only gets paid for the value it creates. And we put some examples of that in our opening brief, but whatever value Metropolitan creates, they get another 29% of that value. Plus, if the value is below a certain threshold, they get a true up payment. And Metropolitan is contractually committed, and we went over the language that survives closing, to both continue to use commercially reasonable efforts to obtain the development, and it's contractually committed to do nothing less than 120 market rate rental units. That's in the contract. If they – and Metropolitan, during this time, Your Honor, has real risk. It carries all of the costs. It carries all the taxes. It carries all the redevelopment costs. It carries everything. And Metropolitan only gets paid if it can increase the value. And even then, Metropolitan gives the parcel owners a huge chunk. And that's with them starting about $600,000 over the property value for their $1.4 million capital account. So if we're in this for a while, Metropolitan is going to be suffering. And someday, everyone thinks this is likely to be rezoned because it's, again, walking distance to College Park campus. It's within spitting distance of the Metro. And, Your Honor, I would point out, because I see the clock's ticking down, I do want to say if you look at Section 6, this is the fourth thing I would have pointed out. I was going to ask you to look at Section 3.4 first. Yes, Your Honor. There's something implicit there. It says if Metropolitan is not successful in obtaining, it doesn't say in using its best efforts to obtain. Correct. So if it's not successful in obtaining, there will be – you can get extension. So my real – doesn't that suggest that that's really the condition, that they must obtain it? No, Your Honor. And the reason is – and the district court seemed to miss this, too. The district court and my colleagues don't quite understand why Metropolitan would not move forward with the development. They don't understand that Metropolitan's got a lot of money sunk into this. It needs that time to do its best and decide what it's going to do. There's an assumption that, well, if you don't get the land use approval – Well, I know the reason for that, but I'm saying the setup for those extensions refers to only obtaining. In other words, that makes it the subject of the whole endeavor. That's the big issue in this case. It implies that obtaining it is the important thing, not using your best efforts. But for what, Your Honor? Obtaining it in this case is – It says obtain land use approval. Right, right. But for what? Here it is. That's for the right to extend the entitlement period twice. I know what it's for. Yes, Your Honor. But the implication is that what's on the table is not using your best efforts to obtain. It is actually obtaining. To get the entitlement period, Your Honor, is 100 percent right, not agree. But we're talking about closing. But the condition setting it up for an extension is not that you used your best efforts, which goes back to paragraph 3, 3.3a. But you were trying to – we were trying to understand how to read that, use your best efforts to pursue and obtain. And it seems to me that 3.4 reads on to that to suggest the important part is the last part of that is to obtain. So, Your Honor, I understand. However, I would say that the parties, when you said it might be implied, the parties are very expressed here about what gives rise to what. They're expressed, but you're challenging a reading of that one line, and it has some difficulty in it. Your Honor, if you take – and I know I'm out of time, so I can sit down and deal with this on rebuttal, or I can answer now. Go ahead. Thank you, Your Honor. So there are, for example, 2.4, adverse conditions, as a condition to Metropolitan's obligation to close, right? And then there's section 6, which says the following are conditions to close. And then there's section 6.5 that says deliveries made at closing. And in all of those parts, right, they're very specific about what you need to close. Nowhere do they enumerate the land use approvals as a condition to close. How can you close if you haven't gotten the development? The whole thing is to develop the property. That's the whole reason for this agreement. Right, Your Honor. It is. But as I mentioned, we are contractually committed to continue to try to develop that property. We just do it as a manager of an LLC, and we pay them a huge chunk under a pre-negotiated LLC agreement. It's already baked, Your Honor. Why don't we hear from your colleague? Thank you, Your Honor. Thank you, Your Honor. My name is Stephen Allen. I represent the parcel owners. I want to start by thanking the court for allowing me to be seated. As your court can see, I had some health issues. Also, because of those health issues, I may not sound conversational at times. In order to articulate words so Your Honors can understand me, I have to be strenuous in what I say. Rather than just only speaking in a conversational tone. No less a greater legal mind than my wife, who is not a lawyer. When I told her about this case, I summed it up. Metropolitan wins if they get the approval during the entitlement period, which would have been fine with us. Under Metropolitan's theory, Metropolitan wins if it doesn't get the approval. If it tries and fails, it's still entitled to the approval. And now we're in 2023, seven years out, and they still don't have the approval. The contract, as Judge Hazel made it clear, was for the purpose of building the project, 120 multi-residential units if the zoning could be obtained. And Metropolitan gambled that it could obtain those, the zoning, within three years. Well, it took the gamble, and it's lost. That's what real estate developers sometimes do. They don't get the opportunity now to rewrite the contract. When you look at Section 3.3, two important clauses. The first clause gives them the exclusive right to pursue and obtain so that our clients enter into a contract, giving them that opportunity. Then there's a comma. The term commercially reasonable does not appear until after the comma. And that's to the extent, if it does apply, the series modifier might apply after the comma. They want to use the series modifier to take the word obtained out of the contract. Counsel, can I stop you there, please? Yes, Your Honor. I'm not sure. I'm trying to understand why you think applying commercial best efforts takes obtaining out of the contract. It seems to me their argument is that use commercial best efforts. And I know it says pursue and obtain one time without that. But then after and it says use commercial reasonable efforts to pursue and obtain. I think they're saying they don't want to take obtain out of it. They're saying obtain applies, but they don't have to actually accomplish it. They just have to use their best efforts to accomplish it. Well, thank you, Your Honor. First of all, the words best efforts do not appear in their initial brief. Don't what? Do not appear in their opening brief. It was not argued before the district court. This idea of best efforts came in their reply brief. The simple fact is their position is that if they pursue, and if they pursue in a commercially reasonable manner, that's all they have to do. And for that, they get a 71% interest in the LLC, the sole asset of which is the property. As far as they're concerned, the word obtain is irrelevant. Well, it just is less. It's just not. I think it's not that it's not irrelevant. It's not that it's irrelevant. It's that they don't have to obtain it before closing. And maybe it's a good deal. Maybe it's a bad deal. Your colleague talks about reasons. It's a good deal for you all. The way they see it, you talk about it differently. It's hard for me to really know that. I'm just trying to figure out what the agreement says. And it seems to me your position requires us to say that in order to close a condition precedent is that the approvals be obtained. That's correct. And I don't, I mean, conditions precedent means something in contract law. And it seems like we're going to have to imply that rather than have something that expressly says it. Article 6.2B says that they have to show up at closing having fulfilled all of their obligations. Correct. And with the deliveries. Their obligation is to obtain the approvals within the entitlement period. That is a consistent theme throughout the agreement as the court judge found. Only if used commercial best efforts doesn't apply to obtain, correct? Even if commercial best efforts applies to obtain, you still have to obtain. Without obtaining, the property cannot be developed. Now, one issue here. Can I stop you on that point? I think that makes sense to me that without the approvals, you can't go forward with the agreement. But it seems like parties could decide that we still want to do a joint venture, even though we haven't gotten to the point that we have the approvals. And I think that's the reading they're suggesting. That one way this would have developed, that you would have gotten the approvals and you would know everything would be lined up, I's dotted, T's crossed, we know where we are. But if we don't have that, we could still have a joint venture to pursue the same purpose. We just are in a different situation. Why doesn't the agreement contemplate that second scenario? Because that was not the agreement. Your Honor is correct. There could be an agreement that says that, but that's not what this agreement says. Also, 10.8 of the joint venture formation agreement makes it clear that in this agreement, time is of the essence. They don't get forever to obtain approvals or to try to obtain approvals. And even Mr. Horn, their expert in his affidavit, candidly says, I'm not sure they're ever going to get the approval. They don't get an indefinite period of time, indefinite into the future to get the approval. They're given three years in which you obtain the approvals. Time is of the essence. They did not do so. I will agree, they tried. Whether it was commercially reasonable or not, there's no evidence really of that, but that's not here before us. Simple fact is, they tried to get the approvals. Everybody concedes they did not get the approvals. They were not given a window that would be open forever. Time is of the essence. Having failed to get the approvals, they're out of the contract. What happens? They're saying here that we now have an absolute right to be admitted to the LLC. Which means we get 71% of the LLC and complete managerial control. Even the restated operating agreement, which no one ever signed and was never finalized, was even the joint venture formation agreement, says this is what it will likely look like in a form similar to this. Contemplates it doesn't go into existence unless and until the joint venture, the approvals, are obtained. Take a look at Section 5.7, discusses the budget for the joint venture, but it makes no mention of a budget to continue pursuing the approvals. Section 5.1.2.1 on Joint Appendix 63-65, 5-7 on Joint Appendix 69-70, is the general plan for development, but again, nothing about continuing to obtain the approvals. And the why is that agreement doesn't come into place until the joint venture is formed and the joint venture is not formed until the approvals are obtained. And obtaining the approvals is an obligation to close under 6.2b. Can you point me, is the part of the agreement that you contend obligates Metro to obtain the approval before closing? Is it 3.3a? Well, 3.3a says they have to obtain the approval, that they have the right to pursue and obtain. 6.2b says, it's the closing paragraph, 6.2b says, in addition, that as of the closing date, the other party shall have performed its obligations here under. Yes, sir. And its obligation here under is to obtain the approval. So that's the point I'm trying to get at. Where is the part of the agreement that obligates them to get the approval? It's implicit throughout the agreement. Excuse me, sir? It's implicit throughout the agreement. It's in the recitals where the recitals state the purpose of forming the joint venture. And maybe it's implicit, and I appreciate that argument, but can you tell me if it's explicit anywhere? There is not a specific sentence that says... One moment. My partner is... That's fine. I thought your argument was that 3.8 is the explicit obligation, and you read that sentence to be two distinct matters. One being to use commercially reasonable efforts to pursue, and two, to obtain. In other words, that's an ambiguous sentence because you have to figure out whether the commercially reasonable efforts modifies both pursue and obtain. If it doesn't modify both, then your position would be supported. If it does modify both, then their argument is they've satisfied that obligation and could close. Of course, I don't know what they're closing on, but... Judge Hazel, I think, best said it when he indicated that commercially reasonable efforts does not divide pursue from obtain. Under their argument, if they exercise commercially reasonable efforts to pursue, they never have to obtain. No, I think their position is a little different. I think their position is they use commercially reasonable efforts to pursue and obtain. So the commercially reasonable efforts also modifies obtain. Grammatically, that's the argument they make to say their obligation is not to actually obtain, but to use commercially reasonable efforts to obtain. Assuming that's correct. Yeah, that's their argument. That's their argument for the moment. If you use commercially reasonable efforts to pursue and obtain, but you don't obtain, you can't develop the project. There's no reason... Well, that's the implicit argument. The whole thing is for the development. But why, counsel? I mean, if you haven't obtained them, that doesn't necessarily mean you won't obtain them in the future. So why are you drawing a line? I mean, it seems to me, again, I don't know what's inside all the parties' heads, but it seems to me it's not necessarily unreasonable to say we're going to have a joint venture to do this very thing, but we just haven't achieved everything we would have liked so far. People do joint ventures before everything's lined up all the time. And I think, so I don't know that the argument that the purpose is to develop it and you hadn't gotten the approvals means it doesn't make any sense. It's just, to me, figuring out what the contract says. This is not a contract which gives them an open-ended period to obtain the approvals. There is an entitlement period. Entitlement period means something, and what it means is they're given a window of opportunity in which to pursue and obtain the appraisals, the approvals. You have to obtain the approvals within that three-year period. At one point, they asked for another 18 months, and we said no. Right. Well, that's my suggestion by focusing some on 3.4, where it refers only, in other words, if they have not obtained, then they can get extensions. But the fact that it refers to only have not obtained sort of suggests that's the object of the whole agreement. But I'm not sure it's implicit. I mean, it's implicit, not explicit, if that's so. Is there a similar, I mean, the memorandum option, 2.3, also only refers to obtain, right? That's correct. They lose their memorandum of option if they do not obtain approvals within the entitlement period. They don't get to keep the memorandum of option if they're pursuing or making efforts to obtain. Does that factor into how we read 3.3? I'm sorry. Does that, as well as the point Judge Niemeyer was making, should that factor into how we read 3.3a? Yes, I think that's right. You have to, Judge Niemeyer is correct, that in 3.4, if they can't do it within the original two-year entitlement period, you can get up to a year more to obtain the approvals. Judge Harris' question was, do you get any benefit from paragraph 2.3? Yes, because they wanted to be able to protect themselves during the entitlement period. The archives did not go out and mortgage a property or sell the property after a month. So they wanted to be able to put a memorandum on the land records, which essentially would freeze the title and let the world know that they have the opportunity to obtain the approvals on this property. Nothing could be done in the meantime. But they have to obtain the approvals within the period of the entitlement period, and they had to give us, if they filed the memorandum, the release so that if they did not get the approvals, within the entitlement period, we didn't have to arm wrestle with them to release that memorandum. We could go right in and file it. It's all tied to there's a finite period of time in which to obtain the approval, and that finite period of time is the entitlement period as extended under 3.4. Does that answer your question, Judge Rushing? Thank you. I apologize. I referred to my good colleague, Judge Rushing, as Judge Harris, and I have the highest respect for both of them. So at the end of the day, this would be a different case if it said pursue to obtain. If it said pursue or obtain, that's why they want to use the series modifier. To ignore the word and, pursue and obtain means what it says. You must obtain in order to fulfill your obligations under the agreement, and 6.2b makes it clear you have to fulfill your obligations. But 6.2 doesn't help you because 6.2 just refers to obligation, and the question is what is the obligation, and your argument is the obligation is set forth in paragraph 3. With all due respect, 6.2b does refer to obligation. It does, but obligation is not defined. If it said obtain the approvals, that would be different, but it just says obligation, so we still need to look elsewhere to find out what the obligations are. Well, from the beginning of the agreement in the recitals, it talks about condition precedents, and under Maryland law, condition precedents can be both expressed and implied, and throughout this agreement it's very clear in the various sections, including 2.3, 3.4, and others, that a condition precedent here is that you obtain the approval. Might it have been better to have a single declarative sentence that says the condition precedent is X? The parties understood what the condition precedent was as you read the entirety of the agreement, which is what Judge Hazel did, and the condition precedent is to obtain the approvals, and it is an obligation. If you don't obtain them, you don't get forever to obtain them, and time is of the essence, makes it clear that the entitlement period is a period with teeth. You don't get beyond two years plus one year. I suppose recital B gives you some comfort, too, because recital B sort of precludes the option that Judge Quattlebaum had suggested the possibility of, or it could have been an agreement that it continues thereafter, whereas B says the purpose of it is to develop the property, and the only way to develop the property is to obtain approvals. That's right, and you can't develop the property. Everybody concedes the property cannot be developed in the manner agreed without the approval. All right. And everybody agrees the approvals were never obtained, and even their expert horn can't say the approvals will ever be obtained. Thank you, Mr. Quattlebaum. Thank you, Your Honor, unless Your Honor has more for me. Mr. Quattlebaum, we'll hear from you on rebuttal. Thank you, Your Honor. Your Honor, leading at recital B, parcel owners LLC and Metropolitan desire to enter into a joint venture to develop the project. That's fine. It doesn't say when. It doesn't say what the terms are. No, my only point was, and none of these arguments are slam dunks. I mean, that's why we're on appeal here and we're debating the different meanings, but my suggestion was that the whole purpose of the agreement was to develop the property, not just to own it and bring you in as a partner. The idea was to develop it, and so the question is, development would mean nothing if they didn't get approval or you didn't get approval. Right, but it's a question of when. We all agree the purpose is to develop the project. It's a question of when and how does it get developed, and we committed to the 120 marker rate. Sorry, Your Honor. Well, there's no real reason to close if you don't have the approvals and go ahead with the development. Somebody else might want to develop. This is not an indefinite thing. Well, Metropolitan and the parcel owners agreed that they would transfer, so long as we're in compliance with the contract. That's the big question. But then it goes on indefinitely, and yet the agreement talks about time is of the essence. In other words, there's got to be some meaning about the whole thing. I don't know which side drafted this agreement or whether it was a negotiated agreement. It was a negotiated agreement. The parcel owners were represented by Miles and Stockbridge. Metropolitan was represented by a solo named Jay Chadwick, and they both had outside counsel involved in the preparations. Well, I could have had the counsel in a conference room and talked to them a little bit about some clarity in the agreement. Yes, Your Honor, but that's a big issue here because the Maryland law and the Fourth Circuit law, we're not looking for conditions preceding, right? We're generally trying to avoid. Actually, in the beginning there, not only is the recital that it was for the development, but they also talk about the conditions imposed thereafter as conditions precedent. That's in recital C. Correct, Your Honor, but they don't include. You can see Metropolitan's decision to seek the land use approvals is after that. It's separate. It's set off by a clause from that comma, so it's treated as something different than the conditions precedent. Counsel, could you address 2.3? Yes, Your Honor. 2.3 is the memorandum of lien, and we never recorded the memorandum of lien, but we had the right to. We're trying to interpret the agreement. We got interpretive at the time it was written, and so whether you recorded it or not is one thing. We're trying to draw clues from a variety of sources in the agreement. How does that not, at least on that issue alone, help parcel owners' argument that you had to actually obtain them? Because what happens at the end of the two years, right? So that lien can only be recorded during the entitlement period, and then at the end of the entitlement period, we are either going to close or we are going to exercise our sole discretion to walk if we can't get the approvals. So in either circumstance, we don't need the lien. In either circumstance, we're going to be protected by being an owner in that JV and having rights there. We don't need the lien, or we're going to walk, and we don't need the lien. But 2.3 doesn't just say at the end of the entitlement period they get the release. It says if you haven't obtained the approvals by the end of the entitlement period, they get the release. Under your description, it would, regardless, when the entitlement period is over, release is filed. But that's not what it says. Well, I agree with you, Your Honor. But at the end of the entitlement period, if we don't have the approvals, our options are to close or terminate. And that's why I pointed out the closing date. But should we read something into the fact that if you have the approvals, you get to keep the option on there. You get to continue to restrain the property in a way if you have the approvals, but you don't get to if you don't have the approvals. I don't read that because if we close, then we own the JV, and then we have the right under the JV agreement. Well, that assumes your theory about... It does, but it just so happens that... It doesn't really answer the question. It doesn't really answer the question. It just answers the question with your assumption about what you get to do when the entitlement period is over. I'm asking, should we read something into the fact that 2.3 says if you don't have the approvals at the end of the entitlement period, you don't have a right to the property. You don't have a right to put the world on notice that we still have dibs on something here. But if you do obtain the approvals, you get to keep that notice to the world on the property. My answer to that question, Your Honor, is no. And my answer is no because at the end of that time period, we are either going to walk or we're going to close. And we don't need to put the world on notice of our rights at that point because our rights are going to be through the JV agreement. Whether you get approvals or not. Whether we get approvals or not. So that's just a relevant paragraph they could have put. If you get the approvals, if you don't get the approvals, either way, release is filed. Well, at the end of the entitlement period, if we do not have the approvals, the release is filed. And if we do have the approvals, it becomes irrelevant. But yes, we would still file the release because we would then be tying up a property that we're managing the JV for. Does that answer your question? I do want to make sure I'm answering your question. It seems you want to potentially file the memorandum before you become an owner to protect your rights. And if the contract gives you the right to become an owner, you don't need a memorandum to protect your rights. You have ownership rights. That's right, Your Honor. And I know that my time has expired. I will just say if the court were to look at Section 2.4 and 4.3, and I use this as a contrast, Section 2.4, as a condition to Metropolitan's obligation to close, there should be no material change. Section 4.3, it requires the delivery as a condition. As a condition of Metropolitan's obligation to close, the title company shall deliver an all-to-owners policy, right? So you have a contract that's in the minutiae of having an all-to-owners title insurance policy, and yet something which is being claimed should be an express condition is expressly not a condition anywhere in the closing. And when you look at Section 6.2 and you look at the owner's deliveries, which is Section 6.5, Metropolitan's deliveries and escrow, we deliver the JV agreement, they deliver the JV agreement. There's no section for the land use approvals. And I go back to Section 10.5. Provisions that are not fully performed at the closing shall survive the closing. So, Your Honor, it may be that they regret this deal. It may be that they now think this deal is a windfall and that they want a new partner. But the issue is that we don't look for conditions because they find forfeiture, and that's in the Howard case from this court, I think in the 70s. And I just, given that we're talking about implications and what may have been implied, we're really on the other side of when we would impose a condition, Your Honor. All right. Thank you. We'll come down and greet counsel and then proceed on to our last case. Thank you, Your Honor.
judges: Paul V. Niemeyer, A. Marvin Quattlebaum Jr., Allison J. Rushing